Jenkins *et al* *vs* Nolan, executor.

JENKINS *et al. vs.* NOLAN, executor.

1. Though demurrer be filed and considered, the grant of a preliminary injunction does not adjudicate the demurrer nor bar a motion at the final hearing to dismiss the bill.

2. To a bill by an executor for direction and for relief, in which he is personally interested as creditor, and as surety of his testator, he is a party in his individual capacity also, and as such is bound by the decree.

3. A claimant who has chosen claim for a remedy to resist a levy, may be left to that remedy until after one trial on the direct right involved, though she might have been entitled to maintain a bill of peace had she filed it before adopting the remedy by claim.

January 11, 1888.

Practice in Superior Court. Demurrer. Injunction. Debtor and Creditor. Principal and Surety. Parties. Levy and Sale. Before Judge LUMPKIN. Henry Superior Court. April Term, 1887.

Reported in the decision.

A. M. SPEER; JOHN D. STEWART; JOHN I. HALL, for plaintiffs in error.

R. T. DORSEY, for defendant.

BLECKLEY, Chief Justice.

In September, 1869, Lemon (the defendant in the present bill, who has died pending the cause, and is now represented by Nolan as his executor) filed a bill against Mrs. Jenkins and her children (the complainants in the present bill) and several others, alleging that he was executor, creditor and surety of his testator, and praying that certain land claimed by Mrs. Jenkins under a deed of gift dated in August, 1863, from his testator (who was her father), might be set aside, and the land be subjected to the payment of the testator's debts, including the debt to him and the one for which he was liable as surety. He

also prayed for direction in the execution of his trust as executor, and for general relief.   A decree upon that bill was rendered in October, 1872, upholding the deed of gift, declaring the land not subject to the testator's debts, nor assets in the hands of the executor, and adjudging that the premises be recovered for the uses declared in the deed, the jury finding expressly that, at the date of the deed, the testator had property enough to pay all the debts against his estate.   This decree was afterwards affirmed by the court that rendered it, on a bill of review, the case having, in the meantime, come up to this court chiefly on certain questions touching a third competing title to the land. *Lemon vs. Jenkins,* 48 *Ga.* 313.

The bearing of the decree upon the decision now about to be made, concerns alone the debt for which Lemon was the surety of his testator.   That debt was a liability of the testator, created before the deed of gift was executed, and was sued to judgment against the testator prior to his death, which occurred in 1866.   The testator appealed, thereby vacating that judgment, and it was upon this appeal that Lemon became his surety.   The testator dying whilst the appeal was pending, Lemon, as executor, was made a party in his stead, and in September, 1869, but a few days before the above mentioned bill was filed, the appeal terminated in a judgment against Lemon both as executor and as surety on the appeal.   This judgment, until afterwards amended, was not a judgment *de bonis testatoris.*   It was in no condition, nor was the *fi. fa.* that issued upon it, to follow the assets of the estate at law, and could only have pursued them, if at all, in equity.   The plaintiffs in the judgment were not parties to the bill, and the only representative of the judgment before the court was Lemon, who was personally bound for its payment, certainly as surety, and perhaps also as principal.   He, being the sole complainant, made such parties to the bill as he chose, and he neither alleged that he could not induce the plaintiffs in the judgment to join with him as co-complainants, nor made them co-

defendants with Mrs. Jenkins and the other defendants.

Before the bill of review above spoken of was filed, which was in February, 1874, Lemon ceased to be executor, and was succeeded by the widow of the testator as administratrix *de bonis non cum testamento annexo*, and under the influence and by procurement of Lemon, she, with others interested, filed that bill; and the same was finally dismissed on demurrer in April, 1879.

In September, 1873, Lemon caused the judgment against himself as executor and as surety on the appeal to be levied on the land, and Mrs. Jenkins interposed a claim. Sometime thereafter this levy was dismissed or abandoned, neither the judgment nor *fi. fa.* being against assets of the testator's estate, but only against the property of Lemon, that is, *de bonis propriis*, not *de bonis testatoris*. In 1880, however, he procured both to be amended, or the judgment to be amended and a new *fi. fa.* issued; and then, in March of that year, caused another levy to be made on the land, and Mrs. Jenkins again interposed a claim, which is still pending. It is inferable that Lemon, at some time, paid off the debt to the original plaintiffs, but when does not appear.

In March, 1883, Mrs. Jenkins, in her own behalf and as next friend for her children, filed the present bill against Lemon as a bill of peace, charging in substance the foregoing facts with others, and praying damages for vexatious litigation, and the consequences thereof, and the means used in giving rise to and carrying on the same; also praying to be protected by perpetual injunction from further annoyance, trouble, litigation, etc. The theory of the bill is, that the decree of October, 1872, settled the title to this land for all time adversely to the rights of Lemon, whether as executor, creditor or surety, and especially after the decree was reviewed and confirmed; and that further litigation touching these rights, or drawing her title in question, is useless, unwarranted, vexatious and malicious.

There was an application for a preliminary injunction of

the claim case until the hearing, and the defendant having demurred to the bill substantially for want of equity, the application for a preliminary injunction was (by an order taken in term) set down for hearing at chambers. It was heard accordingly on the bill and demurrer thereto, and the preliminary injunction was granted, but no judgment disposing of the demurrer was rendered, or if rendered, is not in the record. This was in July, 1884.

At the April term, 1886, the bill came up for final hearing, when the defendant renewed his demurrer, to which the complainants objected because, as they contended, the demurrer had been passed upon when the injunction was granted, and that decision and judgment remained of force. The court declined to hear the demurrer, but entertained and granted a motion to dismiss the bill. Both to entertaining and granting the motion the complainants excepted.

1. The first question is, was the case still open to a motion to dismiss the bill for want of equity as a bill of peace? We have no doubt that it was. The consideration of the demurrer at chambers on the application for injunction was only as to that application. There was no attempt, so far as we can ascertain from the record, to make a final disposition of the demurrer. The chancellor, according to the order taken in term, was not sitting for that purpose, but only to deal with the application for injunction, and the order granting the injunction is silent as to the demurrer. No such order is conclusive upon the merits of the bill; nothing by such an order is finally adjudicated. *National Bank vs. Printup,* 63 *Ga.* 570; *Old Hickory vs. Bleyer,* 74 *Ga.* 201.

2. That Lemon, as executor, creditor and surety, was a party to the decree which was rendered in 1872, on the bill filed by him to subject this land, is certain. He sought direction as executor, and he sought relief as creditor and surety, exhibiting the note of the testator and this *fi. fa.* against himself as evidence of his rights. He prayed ex-

pressly that this land might be subjected to the debt which the testator owed him, and to that on which he was surety. Had he succeeded in any capacity in condemning the land, either because it was assets, or because it was exposed to his claim as a creditor, or to his equity as a surety on account of having been conveyed by gift when the testator was indebted and had no right to donate his property to his daughter, a sale of the land could, and doubtless would have been decreed, and Mrs. Jenkins and her title would have been irrevocably bound by the result. He thus had a chance to win in each of three characters, and shall it be said that he could lose in one only? His bill distinctly made the point that the gift was void as against the debt to himself and the one on which he was surety, for the reason that these debts were older than the deed, and the jury expressly found by their verdict that the gift was valid, and that the donor then had property sufficient to pay all the debts of his estate, meaning thereby, no doubt, that he was able to afford the bounty to his daughter without injustice to his creditors. With Mrs. Jenkins, the executor, the creditor, the surety of her father, brought himself face to face by his bill, and to defend herself she had to resist him on each and all of his lines of attack. He had a right to test her title thoroughly, and he did so test it, and found it invincible. She did not demur him out of court as executor on the theory that he could not, in the capacity of executor, set aside a fraudulent gift made to her by her father, but took issue with him on the facts, and the jury determined the facts in her favor.

True, the plaintiffs in the judgment were not parties to the bill, but the reason was that Lemon, who was sole complainant in the bill, did not make them parties. Moreover, as the judgment then stood, it affected Lemon personally and not otherwise. He was certainly the proper person to represent that debt in a contest for assets with which to pay it, for he was bound to pay it at all events. and the plaintiffs in the judgment had not entitled themselves to

look elsewhere for its payment; and so far as appears, they never did perfect the judgment so as to render it enforceable at law against property of the estate; the judgment, it seems, was amended, not at their instance, but at his. After amendment it was a judgment against himself as executor, to be levied of the effects of the testator in his hands to be administered, and the decree made on his own bill expressly adjudicated that this land is not assets to be administered. Treating the amendment as relating back to the rendition of the judgment, the judgment is conclusive evidence that at that time Lemon as executor had assets with which to pay it. But he cannot produce this land to himself to satisfy the judgment any more than he could have produced it to the plaintiffs for that purpose. By subrogation to their rights, he acquired their rights, and their rights were to have the judgment paid, or have it amended, procure a return of *nulla bona*, and proceed against him for a *devastavit*. For him to so proceed against himself would be nonsense, and this shows that his rights by subrogation are qualified by his relations to the debt before subrogation took place; and these relations include his attitude towards Mrs. Jenkins and her rights of property in this land. He cannot *flank* the prior adjudication as to her rights by showing a new pedigree—that of subrogation. The cases of *Brooking vs. Dearmond*, 27 *Ga.* 58; *Cowart vs. Williams*, 34 *Ga.* 172; and *Brady vs. Prior*, 69 *Ga.* 692, are cited by counsel to show that the decree binds Lemon as executor only. We think these cases are not in point, and the principle as to parties to a bill for direction, etc., is correctly ruled in *Fouché vs. Harison*, last term. 78 *Ga.* 359.

3. Nevertheless, we will not reverse the judgment dismissing the bill. The claim case was made by Mrs Jenkins; she resorted to that remedy rather than file her bill in the first instance, and claim was perhaps the more proper remedy, as there was some appearance of a new right by reason of amending the judgment and the element of subroga-

tion. This new aspect has never been directly passed upon by any court. As a defence against a sale under the levy, the decree would be as effective at law as in equity. It would serve to protect the right and title to the land against re-examination quite as well in the claim case as by a bill of peace. And the pending claim, for aught that appears, could have been tried as expeditiously and cheaply as the bill. Besides, a bill of peace is a very rigorous and ex-·treme remedy, and very reasonable doubt of its being the more appropriate remedy should be given against it. In so far as entertaining it is matter of discretion, the discretion should be exercised in its favor in none but a clear case. *Bond vs. Little,* 10 *Ga.* 396.

Judgment affirmed.